**FLAGSHIP CRUISES, LTD.,**
**Plaintiff, Appellee,**

**v.**

**NEW ENGLAND MERCHANTS NATIONAL BANK OF BOSTON,**
**Defendant, Appellant,**

**and**

**Chemical Bank, Defendant, Appellee.**

**No. 77–1429.**

United States Court of Appeals,
First Circuit.

Argued Dec. 6, 1977.

Decided Jan. 20, 1978.

---

Thomas V. Urmy, Jr., Boston, Mass., with whom Dennis J. White and Warner & Stackpole, Boston, Mass., were on brief, for defendant, appellant.

Philip R. White, Boston, Mass., with whom Louis F. Eaton, Jr., Howard Whitehead and Hutchins & Wheeler, Boston, Mass., were on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, and CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal from an adverse summary judgment by the issuer of a letter of credit which refused to make payment to the beneficiary. The case was considered by the district court on the basis of affidavits, depositions, and responses to interrogatories. Summary judgment having been granted for the plaintiff, we report the evidence in the stance most favorable to the losing party.

In July, 1972, at the request of Citizens Trust Company of Providence, Rhode Island (Citizens), defendant-appellant, New England Merchants National Bank of Boston (Merchants), issued an irrevocable letter of credit, bearing number 18506, to plaintiff-appellee, Flagship Cruises, Ltd. (Flagship), a Bermuda corporation, for the account of Chris Travel, Inc. of Providence. The salient provisions of the letter are (1) that it is addressed to Flagship "Acting through its General Agent, Flagship Cruises, Inc." of New York; (2) that it authorized Flagship to draw up to $200,000 by sight draft; (3) that all drafts must be marked: "Drawn under NEMNB Credit No. 18506"; (4) that each draft must be accompanied by "your signed statement that draft is in conjunction with Letter of Agreement dated May 23, 1972 and Addendum dated June 15, 1972"; (5) that drafts must be negotiated no later than November 3, 1972; and (6) that the credit was subject to the Uniform Customs and Practice for Documentary Credits, 1962 revision, the International Chamber of Commerce Brochure No. 222 (UCP).

On October 31, 1972 Flagship Cruises, Inc. delivered to its bank, Chemical Bank, of New York (Chemical), the original letter of credit; a set of duplicate sight drafts on Merchants, dated October 31, referring to No. 18506, and ordering payment of $200,-000 to Flagship Cruises, Inc.; and a letter dated October 31 to Chemical from Flagship Cruises, Inc., enclosing the letter of credit, advising that "[t]his irrevocable Letter of Credit is in conjunction with our Letter of Agreement dated May 23, 1972, and Addendum dated June 15, 1972", and asking Chemical to "present for collection".

These documents were routed not to Chemical's Letter of Credit Department, where documents would have been examined and payment immediately made to Flagship Cruises, Inc., but to Chemical's International Collections Department, which merely forwarded drafts to the issuing bank for payment. Scrutiny was directed only to whether necessary endorsements had been given. Chemical subjected the documents to this kind of processing and on Monday, November 6, 1972, mailed the letter of credit and duplicate drafts, but not the October 31 letter, to Merchants. The form forwarding these documents and demanding payment was dated November 3, 1972. The drafts had been endorsed by Chemical "for and on behalf of" Flagship Cruises, Inc. There is no evidence when this endorsement was made, although two Chemical employees hazarded their opinion, from their retrospective survey of the rec-

ords, that "processing" (including Chemical's endorsement) had been completed on November 3.

Merchants received the Chemical transmittal form, the letter of credit, and the duplicate drafts on November 9, 1972. Two days earlier Citizens had written Merchants that, since Chris Travel, Inc. had gone into receivership and the letter of credit had not been drawn upon prior to the expiration date of November 3, any draft should not be honored. Merchants advised Chemical on both November 9 and 10 that it was refusing payment because of late presentation and lack of the statement called for in the letter of credit (stating that the draft was in connection with the referenced agreement and addendum).

Several days later, on November 13, Chemical wired Merchants that the draft had been "negotiated by us within validity of credit", that "the statement called for was in our possession but inadvertently held by us", and that the latter was being mailed forthwith. On the same day Merchants wired back that it was too late. Finally, on November 16, Merchants received from Chemical the October 31 letter from Flagship Cruises, Inc. to Chemical.

Flagship sued both Merchants and Chemical, and prayed for summary judgment against both. Merchants cross-motioned for the same. Chemical had cross-claimed against Merchants. The district court granted partial summary judgment for Flagship and against Merchants, indicating that on Merchants' satisfying the judgment against it the claim against Chemical could be dismissed.

The district court, construing our decision in *Banco Espanol de Credito v. State Street Bank & Trust Co.*, 385 F.2d 230 (1st Cir. 1967), to counsel some relaxation in a *strictissimi juris* comparison of letters of credit requirements and documents submitted in compliance therewith, held that (1) the draft and covering letter together adequately identified the transaction and the payee; (2) the draft was negotiated and the covering letter was delivered to Chemical within the prescribed time; (3) the draft was forwarded to Merchants within a reasonable time; and (4) Merchants was shortly thereafter advised of the covering letter, and was not prejudiced by any further delay in receiving this letter.

We first hold that one of Merchants' two stated reasons in refusing payment raised an issue of material fact—its contention that timely presentment had not been made. If negotiation took place on November 3, and a period of thirteen days (or nine business days) elapsed before Merchants received all necessary documents, the court could not find on this record that presentment was, as a matter of law, timely. Plaintiff struggles with this issue but is able to conclude no more than that the court "was justified in ruling that presentation was made within a reasonable time". This might well be true if the court had been making findings and conclusions after a factual hearing. But the issue was whether timely presentation was so conclusively established by the affidavits and depositions that there could be no material issue of fact remaining to be resolved.

Plaintiff, however, recognizing its burden in defending its summary judgment, asserts that timely presentation is a question of law. We disagree. The reasonableness of a period of time—except as to extremes—would seem to be a classic issue for the trier of fact.[1] Merchants' manager of its Letter of Credit Department, Allread, testified in deposition that he would have allowed no more than seven business days for a timely presentation. This indicated an outer limit of timeliness at November 14. But Merchants did not receive all documents until two days later, on November

---

1. *Cf.* Mass.Gen.Laws, ch. 106, § 1–204(2) ("What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action.") The general provisions of Article 1 are incorporated into the Letters of Credit Article of the Uniform Commercial Code. Mass.Gen.Laws, ch. 106, § 5–103(4).

16.[2] Allread averred later by affidavit that the delay in receiving any documents until November 9 and the delay in receiving the missing statement until November 16 were unreasonable.

Article 41 of UCP merely provides that "Documents must be presented within a reasonable time after issuance." Under Mass.Gen.Laws, ch. 106, § 3–503(2), a reasonable time for presentment "is determined by the nature of the instrument, any usage of banking or trade and the facts of the particular case." There was no evidence of this nature, other than what we have summarized above. We hold that timeliness of presentment was, on this record, an issue of material fact.

Merchants initially gave one other reason for refusing to pay—the absence of a statement that the draft was in conjunction with the letter of agreement and addendum specified in the letter of credit. It will be recalled that the October 31 letter of Flagship Cruises, Inc. stated that the *letter of credit*, not the draft, was in conjunction with the specified documents. It seems to us that if this letter had been timely received by Merchants, it would have fulfilled this requirement of the letter of credit. We see this very simply as a case of the greater including the smaller. That is, if a draft must reveal its nexus to a specific agreement, this requirement would be satisfied if the entire letter of credit, on which the draft depends, relates to the specific agreement. We do not see this kind of interpretation as relaxing the strict construction approach to letters of credit but rather as equating a literal requirement for its functional equal.

What we have said underscores the importance of the issue of timeliness of presentation. That is, if it is found that the presentation of all documents was timely, and in the absence of any showing that a bank might possibly be misled, we would rule that Merchants' second objection, relating to the absence of a statement that the draft was in conjunction with specified agreements, would not be well taken.

Before we address other objections, we must reckon with plaintiff's argument that UCP confines Merchants to these two first stated bases for refusal to pay. Article 8 states that if a claim of noncompliance with a letter of credit is made, a bank must state the reasons therefor. Plaintiff draws from this requirement the conclusion that no reasons other than those stated can under any circumstances be relied upon. Plaintiff relies chiefly on *Barclays Bank D. C. O. v. Mercantile National Bank*, 339 F.Supp. 457 (N.D.Ga.1972), aff'd, 481 F.2d 1224 (5th Cir. 1973). We are satisfied that the better rule confining protestors to their stated reasons is limited to situations where the statements may have misled drawers, who could have remedied defects but relied on the statement of reasons to their injury. We find sustenance not only in the facts of *Barclays*,[3] but in the same circuit's decision in *Wing On Bank Ltd. of Hong Kong v. American National Bank & Trust Co. of Ft. Lauderdale*, 457 F.2d 328 (5th Cir. 1972). *See also Moss v. Old Colony Trust Co.*, 246 Mass. 139, 150, 140 N.E. 803 (1923).[4] In the case at bar, Merchants' statement of reasons came after a time when Chemical or plaintiff could

---

**2.** Plaintiff argues that Merchants' announcement on November 13 that presentation was too late constituted anticipatory breach. But, if this were so, it would serve at most to permit plaintiff to sue at the earlier date. It does not change the fact that in actual fact presentation was not made nor the letter of October 31 available for examination until November 16.

**3.** The circuit court did state the broad general rule "that '[b]y formally placing its refusal to pay on one ground, the defendant must be held to have waived all others.'" 481 F.2d at 1236 [citations omitted]. But later the court con-

fined its holding to the facts of the case and made clear that it was relying more on estoppel theory than on waiver: "Mercantile cannot lull Barclays into believing that there was no problem with the documentation *when there was still time for Barclays to have attempted to cure* the technical defect . . . ." *Id.* at 1237 [emphasis added].

**4.** This estoppel principle also applies as to raising defenses in general contract causes of action. *See* 3A Corbin, Contracts § 762 (1960), pp. 524–25.

have taken any effective remedial action since the final date for negotiation had already passed.

■ We therefore consider reasons advanced by Merchants in addition to those it included in its first response of November 9. The first such reason is that negotiation, if it took place at all, was not timely. We agree that negotiation did take place even though Chemical apparently did not give Flagship value for the drafts.[5] The letter of credit itself clearly distinguishes between the act of negotiation, which the beneficiary (Flagship), must accomplish before a certain date (November 3), and the act of presentation to the drawee (Merchants), which is not governed by any specific time limit except that presentation must be "due". We infer from this distinction that the beneficiary is entitled to deal with its own bank which then in turn passes the papers on to the drawee bank. Flagship's duty, as we read the letter of credit, was to present the bills of exchange to its bank before November 3. We agree with the district court's conclusion that Flagship did so. Flagship presented all the necessary documents to Chemical on October 31. Chemical's form, calling on Merchants to honor the draft, was dated November 3. Some time during this interval negotiation occurred.[6] The fact that Chemical did not send anything to Merchants until the following Monday, November 6, does not affect our conclusion that negotiation was timely.

■ Finally, there are appellant's arguments that the draft was drawn by the wrong party (Flagship Cruises, Inc., rather than Flagship), that there was no statement linking the draft to the agreement and addendum cited in the letter of credit, and that the draft did not recite the precise legend described in the letter of credit (point 3 in our earlier recitation). As to these, we can quickly dismiss the last. The draft named Merchants and, immediately thereunder, identified "No. 18506". We have no difficulty in saying that this is compliance with the requirement that a draft be marked: "Drawn under NEMNB Credit No. 18506".[7] We say this because we cannot see how the form actually used could be interpreted in any other way.

■ As to the first two arguments summarized, *supra*, we think that, *if* the October 31 letter of Flagship Cruises, Inc. had been timely presented to Merchants, there would be no possibility of Merchants' being misled. While the draft was signed by Flagship Cruises, Inc., with nothing to indicate its relationship to the beneficiary of the letter of credit, the October 31 letter made clear *in the letterhead* that Flagship Cruises, Inc. was an agent for Flagship, *in the text* that Flagship Cruises, Inc. was the general agent for Flagship, and *in the signature* that it was acting as agent. What we see is a combination of a draft drawn by a party technically different from the original beneficiary, and a letter making clear that relationship between principal and agent, as clear as if it were reproduced on the draft itself.

5. Merchants suggests that under UCP a bank must give value to be considered a negotiating bank. Article 8 states that "Payment, acceptance or negotiation against documents . . . binds the party giving the authorization to . . . reimburse the bank which has effected the payment, acceptance or negotiation." We note that "payment", "acceptance", and "negotiation" are used as distinct terms, and there is no indication that the latter two necessarily include payment. While "reimburse" might be understood to imply that payment had been made, it seems more reasonable to understand it in the sense of indemnify for the payment that has been made or will be made as a result of negotiation or acceptance.

6. We find it significant, at least in connection with Chemical's possible liability, that Chemical's wire of November 13 stated that the drafts had been negotiated.

7. We call attention to *Banco Espanol, supra,* 385 F.2d at 234 and n.3, where we observe that *haec verba* does not control absolutely and point to some mellowing in the English courts of the strict position adopted in *J. H. Rayner & Co., Ltd. v. Hambro's Bank, Ltd.*, 156 L.T.R. 380 (1942). Appellant's assertion that *Rayner* dealt with the very defect now under discussion is incorrect. Such a requirement is raised as a hypothetical problem by one judge, *id.* at 383, but there is no discussion as to what would constitute noncompliance.

We have already addressed the argument that there was no statement connecting the draft and the specified agreement and addendum. That is, both as to this and the previous argument, we have said that if it is found that the October 31 letter of transmittal reached Merchants in a timely fashion, Merchants can have no possible cause to complain that it did not know who was the proper party to pay or whether payment was being requested for unauthorized purposes. We do not see these rulings as retreats from rigorous insistence on compliance with letter of credit requirements. They merely recognize that a variance between documents specified and documents submitted is not fatal if there is *no* possibility that the documents could mislead the paying bank to its detriment.

Our conclusion is that Flagship complied with the requirements of the letter of credit in every material respect. It does not follow, however, that Flagship was entitled to summary judgment. The only issue of fact that we have found is whether or not presentation was timely. If presentation was timely then Merchants is liable on the letter of credit. If Chemical failed to make due presentation then Merchants is not liable. Chemical may still be liable if Flagship can establish in subsequent proceedings that Chemical's actions in forwarding the letter of credit to Merchants constituted actionable negligence. We need not take any position as to this issue since it is not presented on appeal of this partial summary judgment.

*Judgment vacated; remanded to the district court for further proceedings in accordance with this opinion.*